**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IANA RODIONOVA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00768-O-BP |
| | § | |
| **TURKISH AIRLINES INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motions for Default Judgment that *pro se* Plaintiff Iana Rodionova filed on September 30, 2025 (ECF No. 26) and on November 4, 2025 (ECF No. 42), the Brief in Support she filed on October 15, 2025 (ECF No. 31), the Motion to Set Aside the Court's Entry of Default and Brief in Support and Appendix in Support that Defendant Turk Hava Yollari, A.O. d/b/a Turkish Airlines ("TA") filed on October 16, 2025 (ECF Nos. 32-33), the response Rodionova filed on October 21, 2025 (ECF No. 35), the objection and appendix TA filed in reply on November 4, 2025 (ECF Nos. 38-39) and the objection TA filed on November 24, 2025 (ECF No. 51). Also pending are the Amended Motion to Deem Service of Summons Sufficient that Rodionova filed on December 16, 2025 (ECF No. 56) and the objection TA filed in response on December 23, 2025 (ECF No. 57).

After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** TA's Motion to Set Aside the Court's Entry of Default (ECF No. 32); and **DENY** Rodionova's Amended Motion to Deem Service Sufficient (ECF No. 56) and separate Motions for Default Judgment against TA (ECF Nos. 26, 42).

## I.    BACKGROUND

This is a case concerning difficulties Iana Rodionova experienced in international travel. In December 2024, Rodionova departed Krasnoyarsk, Russia for a South American vacation beginning in São Paulo, Brazil. As there is no direct flight between the two cities, her journey required connecting flights—first in Almaty, Kazakhstan, and then in Istanbul, Turkey. Other than the Krasnoyarsk-Almaty leg, TA operated each successive flight. While connecting in Istanbul, Rodionova encountered certain difficulties. She alleges that gate agents processed her in a discriminatory fashion, relegating her to a specified line for Russian nationals and applying more stringent boarding procedures than they applied to passengers of other nationalities. Despite these difficulties, Rodionova eventually boarded, and the flight commenced without further issue.

After more than two weeks in South America, Rodionova's vacation ended. On January 4, 2025, Rodionova arrived at the Ministro Pistarini International Airport, the airport of service for Buenos Aires, Argentina, in preparation for the trip home. Her return itinerary planned on four successive legs: Buenos Aires-São Paulo, São Paulo-Istanbul, Istanbul-Almaty, and finally Almaty-Krasnoyarsk. TA operated the first three flights, much like before. And also like before, Rodionova experienced preflight difficulties.

At the gate, a TA representative, ostensibly following procedure, asked Rodionova two routine questions: "How long have you been in Argentina?" and "Have you visited waterfalls?" Based on Rodionova's answers, the representative further inquired if Rodionova had been vaccinated for yellow fever. When the representative asked for proof, Rodionova was unable to immediately provide it because the relevant documentation was at home in Russia.

As a result, the TA representative informed Rodionova that she would be unable to take her flight. The problem arose from an apparent Kazakhstani regulation requiring all passengers

arriving from South America to prove their vaccination against certain mosquito-borne diseases. Rodionova protested this, explaining that she had no intention of spending any time in Kazakhstan, was only transiting through the Almaty airport back to Russia, and was thereby exempt from the vaccine proof requirement. When she urged the gate agents to verify that she had an upcoming flight on the Russian-based Aeroflot airline from Almaty to Krasnoyarsk, they replied that they were unable to find that flight in the Global Distribution System, a flight data program operated by Sabre GLBH, Inc. As Rodionova tells it, Sabre had removed all Russian-based airlines' data from its system in unnecessary overcompliance with an executive order that President Biden issued in the wake of the Russia-Ukraine War.

After an unspecified period of discussion between Rodionova and the TA gate agents, the representatives allegedly threatened to add Rodionova to an air travel blacklist unless she left the airport. Thereafter, Rodionova spent at least one extra night in Argentina before finally boarding a newly booked, separate flight on Qatar Airways that eventually took her to Almaty through Spain and Qatar.

In May 2025, Rodionova sued TA and Sabre in the Northern District of California, alleging a host of federal and state claims. Granting Rodionova's motion, the district court transferred the case to this Court in July 2025. ECF No. 12. The case was assigned to the undersigned pursuant to Special Order 3. ECF No. 13. On August 28, 2025, Rodionova served Sabre with process. ECF No. 23. She claims that she served TA with process the next day. *Id.* On October 2, 2025, the Clerk entered default against TA. ECF No. 27.

On October 16, 2025, TA moved to set aside the Clerk's entry of default, arguing that Rodionova had not properly served the airline. Rodionova moved for default judgment on

3

September 30, 2025, and on November 4, 2025. ECF Nos. 26, 42. On December 16, 2025, Rodionova moved to deem service sufficient. ECF No. 56.

## II.     LEGAL STANDARDS

### A.      *Pro se* pleadings

The Court subjects the pleadings of pro se parties to less rigid analysis than those of a party represented by counsel. "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825–26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### B.      Setting Aside Default

The Fifth Circuit has adopted a policy in favor of resolving cases on their merits, not via default judgments. *Rogers v. Hartford Life & Accident Life Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999). And under Federal Rule of Civil Procedure 55(c), the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In conducting the good cause analysis, the Court generally considers three factors: (1) whether the defendant willfully defaulted; (2) whether the defendant presents a meritorious defense; and (3) whether setting aside the default would "prejudice the adversary." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008).

The Court may also consider whether the defendant "acted expeditiously to correct the default," whether there was a significant financial loss to the defendant, whether the circumstances

implicate the public interest, or any "factors . . . regarded simply as a means of identifying circumstances which warrant the finding of 'good cause.'" *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("Th[e] decision [to set aside a default] necessarily is informed by equitable principles."). Additionally, good cause exists outright where a defendant has not been properly served in the first place. *See Espinoza v. Humphries*, 44 F.4th 275, 276 (5th Cir. 2022). This is because "a defendant cannot default if [it] had no duty to answer the suit—and [it] need not answer until 'service has been perfected.'" *Id.* (quoting *Jenkens & Gilchrist*, 542 F.3d at 123 n.6).

## III.    ANALYSIS

### A.    The Court should grant TA's motion to set aside the entry of default and deny Rodionova's amended motion to deem service sufficient.

On August 29, 2025, process server Sergey Firsov entered the international terminal at San Francisco International Airport ("SFO") and handed Rodionova's complaint to two TA employees: "supervisor Terry and manager Janim," who "took [the] documents without issues." ECF No. 23.

A month later, when TA had not responded to her suit, Rodionova filed her "Notice of Default and Application for Entry [of] Default Judgment by Court Against Defendant [TA]" and declaration in support. *Id.* at 2. On October 2, 2025, the Clerk entered default against TA. ECF No. 27. On October 15, 2026, after the Clerk entered default, Rodionova retrospectively filed a Brief in Support for her request. ECF No. 31. The next day, TA filed the present Motion and brief and appendix in support, arguing that Rodionova never properly served the company.

When "service is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Ammann v. eXp World Holdings, Inc.*, No. 1:25-cv-468-DAE, 2025 WL 3012279, at *4 (W.D. Tex. Oct. 27, 2025) (emphasis added). This is because the Court may not exercise personal jurisdiction over a defendant until the plaintiff satisfies the procedural requirement of summons of service. *Omni Capital Int'l, Ltd. v. Rudolf*

*Wolff & Co.*, 484 U.S. 97, 104 (1987). Here, because TA challenges its service, Rodionova bears the burden to demonstrate why service was proper.

Federal Rule of Civil Procedure 4(h)'s requirements for serving process on a corporation normally apply "[u]nless federal law provides otherwise. . . ." Fed. R. Civ. P. 4(h). TA contends that the service of process provisions of the Foreign Sovereign Immunities Act of 1976 ("FSIA") are "instructive" in this case because it describes itself as "an agent or instrumentality of a foreign state," the Republic of Türkiye ("Turkey"). ECF No. 32 at 3, 10 (citing 28 U.S.C. § 1608(b)). The FSIA states that "[s]ervice in the courts of the United States and of the States *shall* be made" in accordance with its provisions. Fed. R. Civ. P. 4(h); 28 U.S.C. § 1608(b) (emphasis added); *see also Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command. 'Shall' means 'must.'" (citation omitted)). Thus, if the FSIA applies, its service requirements control, not the requirements of the Federal Rules.

### 1.   TA does not make a *prima facie* showing that the FSIA's service provisions control here.

Before it may avail itself of the provisions of the FSIA, TA must make a *prima facie* showing that it is a state agency or instrumentality. *Walter Fuller Aircraft Sales, Inc. v. Republic of Phil.*, 965 F.2d 1375, 1383 (5th Cir. 1992); *Kelly*, 213 F.3d at 847. The FSIA defines an "agency or instrumentality of a foreign state" as:

> any entity . . . which is a separate legal person, corporate or otherwise, and . . . which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and . . . which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

*Id.* § 1603(b).

TA satisfies the third prong of the "agency or instrumentality" definition in the statute because it is undisputed that TA is not a citizen of the United States. It is also not in dispute that Turkey, and not a third country, created TA in 1933. *See* Mehmet Erkan Dursun, John F. O'Connell, Zheng Lei & David Warnock-Smith, *The Transformation of a Legacy Carrier – A Case Study of Turkish Airlines*, 40 J. AIR TRANSP. MGMT. 106 (2014); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (holding that courts may take judicial notice of matters of public record); Fed. R. Evid. R. 201.

But TA does not satisfy the second prong. According to the documentation TA offers in support of its pleadings, 50.88% of TA's shares of stock are publicly traded. *See* Fact Sheet, TURKISH AIRLINES, https://investor.turkishairlines.com/documents/infografik/fact-sheet-2023.pdf (last visited Apr. 14, 2026). The Turkish government, in part through the state's sovereign wealth fund, owns the minority balance of TA's shares. *Id.* Therefore, to qualify as an agent or instrumentality of Turkey, TA must satisfy the definition's first prong and be an organ of Turkey or of a Turkish political subdivision.

The Fifth Circuit has "suggested that there is no clear test for determining whether an entity is an organ of a state." *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 259 (5th Cir. 2016). But the following factors are relevant in the analysis:

> (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law.

*Id.* (alteration in original). Although the factors "provide a helpful framework, [the Court does] *not* apply them mechanically or require that all five support an organ-determination." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. 2000) (emphasis in original).

7

Here, TA only summarily concludes that it meets the FSIA's agent or instrumentality definition because it is "the flag-carrier airline for the Republic of [Türkiye]," but it does not cite legal authority for that proposition. ECF No. 32 at 10. Nor does TA otherwise explain why it should qualify under the FSIA. *See id.*

On the sparse record before it, the Court concludes that TA has not shown that the FSIA applies to it. First, although the Turkish government originally created TA, this Court does not find this fact controlling since the Turkish government is no longer the majority owner of the airline. Second, TA is Turkey's flag carrier, but the Court likewise does not find this fact dispositive. *See Shirobokova v. CSA Czech Airlines, Inc.*, 335 F. Supp. 2d 989, 991 (D. Minn. 2004) (flag carrier was organ of the Czech Republic, but only because Czech government owned 91%). Because TA has not shown that the FSIA applies in this matter, the Court will for purposes of the pending motions analyze whether Rodionova has complied with the service of process requirements of the Federal Rules of Civil Procedure.

### 2.      Rodionova does not show that she properly served TA.

Federal Rule of Civil Procedure 4(h) sets out the requirements for serving process on a corporation:

> [u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, . . . must be served: . . . in the manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(h).

Rule 4(e)(1) in turn permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

As noted above, this case began in the Northern District of California, which transferred venue here on July 16, 2025. ECF No. 12. Rodionova attempted service on TA in San Francisco on August 29, 2025, after the case had been in this Court for a month. Accordingly, the "state where the district court is located" under Rule 4(e)(1) is Texas, and the "state . . . where service [was] made" is California.

"Under Texas law, service must be made on designated individuals who are authorized to accept service of process on behalf of the corporation." *Houston v. Sw. Airlines*, No. 3:17-cv-2610-N, 2018 WL 11536746, at *1 (N.D. Tex. Nov. 20, 2018) (citing Tex. Bus. Orgs. Code § 5.201). Service of process on a corporation in California requires delivery "to the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." *Firsov v. Alaska Airlines, Inc.*, No. 25-cv-05487-NW, 2025 WL 4324346, at *2 (N.D. Cal. Nov. 5, 2025) (cleaned up) (citing Cal. Civ. Proc. Code § 416.10(b)).

TA argues that neither Terry nor Janim, its two employees to whom Rodionova delivered process, is an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." ECF No. 32 at 3-4 (citing Fed. R. Civ. P. 4(h)(1)(B)); ECF No. 33 at 1 (averring the identities of TA's authorized agents for service of process in California and in Texas). Rodionova does not refute these points. Because neither Terry nor Janim is an officer, a managing or general agent, or a specifically authorized agent for service of process,

Rodionova did not properly serve TA under Rule 4(h)(1)(B), Texas law, or most of the methods provided by California law.

However, the Court notes that Rodionova describes Janim as a "manager." *See* ECF No. 23. Because California law permits service on a "general manager," the Court considers whether Janim qualifies as a general manager. The California Supreme Court has identified a "general manager" for purposes of service of process as an agent who is either "of sufficient character and rank to make it reasonably certain that defendant would be apprised of the service" or has given the defendant corporation "substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1226-27 (C.D. Cal. 2008); *United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 948 (9th Cir. 2016) (citing *Cosper v. Smith & Wesson Arms Co.*, 346 P.2d 409, 413-14 (Cal. 1959)). "California and federal district courts have relied on the 'character and rank' and 'substantially the business advantages' language from *Cosper* in more than a dozen cases since *Cosper* was decided in 1959." *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.,* No. 2:21-cv-430-JRG-RSP, 2022 WL 18584501, at *5 (E.D. Tex. Dec. 28, 2022) (collecting cases).

The term "general manager . . . indicates one who has general direction and control of the business of the corporation as distinguished from one who has the management only of a particular branch of the business." *Gen. Motors Corp. v. Superior Ct.*, 93 Cal. Rptr. 148, 151 (Cal. Ct. App. 1971); *Bakersfield Hacienda, Inc. v. Superior Ct.*, 18 Cal. Rptr. 812, 816 (Cal. Ct. App. 1962) (distinguishing between a "general manager of the corporation" and the "managing agent of one part of its business"). But, a branch manager who possesses "sole, unfettered authority to hire and fire employees, to authorize payment of their wages, . . . and to conduct [the corporation]'s core

business activities in the San Francisco area, apparently without oversight from any other manager or office of the corporation," qualifies as a general manager under section 416.10 of the California Civil Procedure Code. *Gibble v. Car-Lene Rsch., Inc.*, 78 Cal. Rptr. 2d 892, 903-04 (Cal. Ct. App. 1998).

Here, Rodionova does not meet her burden to demonstrate that she properly served a TA manager or otherwise properly served TA. In Rodionova's proof of service, process server Sergey Firsov reports that he served the summons on "supervisor Terry and manager Janim" at "SFO Airport, International terminal located at 780 S Airport Blvd, San Francisco, CA 94128." ECF No. 23 at 1. But additional details are lacking. All that remains is a note that "[a]t 11:05AM [TA] representatives took documents without issues." *Id.*

Rodionova's request for entry of default is not any more illuminating on whether service was proper. She declares that "[o]n 08/29/25 Defendant TA was personally served Summons and Complaint in SFO airport, California because no agent was registered in Texas," and that TA is not a minor, an incompetent person, or a person in active military service. ECF No. 26 at 3. Setting aside her inaccuracy that TA does not have a registered agent for service of process in Texas, *see* ECF No. 33 at 1, Rodionova more importantly does not allege any facts showing that Terry or Janim is a person under California, Texas, or other law through whom TA can be properly served. *See* ECF No. 26 at 3. Rodionova's post-default brief likewise does not present facts showing that service was proper and instead lists Rodionova's claims against TA. *See generally* ECF No. 31.

In her self-styled "Notice of Motion and Motion to Strike RE: Defendant [TA's] Motion to set aside the default," Rodionova only raises various personal challenges that she contends make her unable and unobligated to read and respond to TA's Motion. *See* ECF No. 35. Although Rodionova does not substantively challenge TA's arguments, the Court nonetheless construes this

11

"Motion to Strike" as Rodionova's response to TA's motion to set aside entry of default. This decision is appropriate because a motion to strike is an improper means of responding to a motion. *See Owens v. TransUnion, LLC*, No. 4:20-cv-00665-SDJ-BD, 2025 WL 81069 (E.D. Tex. Jan. 6, 2025); Local Civ. R. 7.1(d) ("A response to an opposed motion must be accompanied by a brief that sets forth the responding party's contentions of fact and/or law, and arguments and authorities."); *see also Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962) ("[D]isputed question[s] of fact cannot be decided on motion to strike."). Further, the Local Civil Rules require a party to file a response to an opposed motion within twenty-one days of its filing, and the "Motion to Strike" is all Rodionova filed in response to TA's present Motion in that timeframe. Local Civ. R. 7.1(e).

Outside of that timeframe, however, Rodionova filed two more pertinent entries to the docket. On December 9, 2025, she filed a Notice of Motion and Motion to Deem Service of Summons Sufficient (ECF No. 55). On December 16, 2025, she filed an Amended Notice of Motion and Motion to Deem Service of Summons Sufficient (ECF No. 56). Although these filings were untimely, the Court reviewed Rodionova's contentions in the amended motion that, essentially, because Sergey Firsov asked the "[t]wo guys" at TA's check-in counter at SFO "about authorization to accept legal documents," and because the individuals "took [the] Complaint and Summons without any issues," TA may not now claim service was improper. No. 56 at 1-2.

But this argument treads old ground. If Terry or Janim is an individual "of sufficient character and rank to make it reasonably certain that [TA] would be apprised of the service," that is for Rodionova to plausibly demonstrate. *Khachatryan*, 578 F. Supp. 2d at 1226. She does not. So even if the Court also construes this filing as a response to TA's motion to set aside entry of

12

default, this "Motion to Deem Service Sufficient" still does not shed any light on why service was proper, nor does it present a satisfactory independent basis to deem service sufficient in this case. Because Rodionova does not substantively respond to the arguments in TA's present Motion or state a plausible factual or legal contention for why service was proper under any applicable law, Rodionova has not carried her burden to demonstrate proper service. *See* ECF Nos. 23, 26, 35. As service was improper, TA has shown good cause for setting aside the entry of default the Clerk entered against it. *Espinoza*, 44 F.4th at 276. Thus, Chief Judge O'Connor should **GRANT** TA's Motion to Set Aside the Court's Entry of Default (ECF No. 32) and **DENY** Rodionova's Amended Motion to Deem Service Sufficient (ECF Nos. 56).

**B.      The Court should deny Rodionova's motions for default judgment.**

"[P]roper service of process is a jurisdictional prerequisite to the entry of a default judgment." *Avdeef v. Royal Bank of Scot., P.L.C.*, 616 F. App'x 665, 672 (citing *Rogers*, F.3d at 940). Rodionova has not demonstrated that she properly served process on TA according to law, and because her allegations in her motions for default judgment do not alter that conclusion, she is not entitled to a default judgment against TA. Accordingly, Chief Judge O'Connor should **DENY** Rodionova's separate Motions for Default Judgment against Turkish Airlines (ECF Nos. 26, 42).

**IV.      CONCLUSION**

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** TA's Motion to Set Aside the Court's Entry of Default (ECF No. 32) and **DENY** Rodionova's separate Motions for Default Judgment against TA (ECF Nos. 26, 42) and Amended Motion to Deem Service Sufficient (ECF No. 56).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on April 14, 2026.

_____

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

14